[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. The parties were married in Bridgeport, Connecticut on March 18, 1978. There are two minor children offspring of the marriage, Nicole born December 25, 1980 and Peter born October 17, 1982.
Both parties were born in Poland, but the defendant was here for several years prior to the plaintiff's arrival. At the time CT Page 9593 of the plaintiff's arrival, the plaintiff could neither speak nor write English. She appears to have learned quickly and she started working shortly after her coming here in 1973 at Bridgeport Metal Goods. Her work was interrupted by her marriage and then the birth of the first child in 1980 and again in 1982, by the birth of the second child, Peter.
To permit her to work and still care for the children, the plaintiff arranged for relatives from Poland, including her mother, her sister and her aunt, to visit with her from time to time, sometimes for extended periods. The plaintiff testified that she paid one relative who stayed for quite a while a $100 a week.
There seems to have been no arrangement for the defendant to share the responsibility of caring for the children as infants or toddlers. At the time of the trial, the children were 14 and 16 years old and not in need of a baby-sitter so much as adult supervision which both gave to a limited extent, depending on their hours of work. The plaintiff worked the first shift and the defendant the second shift; however, the defendant's hours were somewhat variable, ranging from 2:00, 3:00, or 4:00 p.m. until 11:00 p.m., midnight or 1:00 a.m., depending on the situation.
In addition, the defendant at one period of time had a second job which, again, meant that he was unable to provide care for the children for other periods of time. In fact, his understanding of his role was that he should work and provide for the children and his wife while his wife should take care of the children and the home as well as work.
The fact that the plaintiff was not versed in English writing or speaking skills when she came probably was one of the reasons that the defendant appears to have taken control of the finances and to have failed to include her in any decisions with respect to acquiring assets or selling assets. While the plaintiff complained about this, nevertheless while employed at Sikorsky she had deducted from her pay $50.00 a week for vacation and she took frequent trips to Poland, at least once every other year, without her husband, sometimes with one child, sometimes with two and sometimes without any children. When her husband asked to go with her, she said he had to stay home and take care of whatever child was not going with her.
While there was no mention of the defendant's drinking when CT Page 9594 the first family relations study was done, there was one for the second study which, of course, was done after the defendant had been moved out of the house. It seems clear that the defendant did buy substantial quantities of beer and liquor. The children also complained that the smelled of alcohol when he picked them up for visitation originally. On the other hand, he never lost a days work and there is no evidence of any violence committed while he was drinking. In fact, it appears to the court that the result of the issuance of the protective order which the plaintiff obtained on the basis of her complaint of the defendant's refusal to move his car which was blocking her car in front of the garage, resulted in the defendant's worst actions. It is ironic that the conduct which resulted in the arrest that produced the protective order was later the subject of a trial in the Superior Court as a result of which the defendant was found not guilty. However, between the time of the entrance of the protective order and the trial, the defendant had been out of the house for several months. That exclusion in itself seems to have produced an over reaction in the defendant resulting in his attempting to enter the home in violation of the order, his lying about whether he entered it or not and his attempting to have the children do what he wanted to do when he had visitation with them. The result was that he has alienated his children and raised the question of whether he would obey any court orders particularly with respect to his entering the house.
In sum, the court was unable to find any particular actions of the defendant which caused the breakup of the marriage. What seems to have caused it is the change in the plaintiff's status from an immigrant without knowledge of the language to an articulate, knowledgeable woman who in effect changed with the change in their economic status and a man who did not change but kept continuing in the same pattern of head of the family with total control of the family's finances.
Consequently, the court finds that neither party is totally to blame for the breakdown of the marriage. The marriage broke down because of incompatibility and this is, therefore, a no fault divorce.
Both parties are asking for sole custody of the children. On the face of it, it appears that the defendant would be less able to care for them than the plaintiff. In fact, his solution for their care while he is working is to have his wife come back in the house and care for them. The plaintiff seeks sole custody CT Page 9595 because it is now apparent that they are unable to communicate effectively. Both are, therefore, rejecting the joint custody recommendation of family relations, which, in the courts opinion, is not appropriate at this time given the relationship between the parties.
Both parties appear to agree that the children should remain in the marital home. Therefore, the question of who gets the marital home becomes part of the question of who would have physical custody of the children. Since the marital home appears to be a matter of almost obsessive concern by the defendant, it must be made clear that while plaintiff may very well have exclusive possession of the home for a period of time, the defendant nevertheless has an interest in the home which must be protected. That interest, however, does not extend to allowing him to interfere with the plaintiff's right of possession.
The fairest thing to do is to allow the home to be in the plaintiff's exclusive possession until the youngest child finishes high school or achieves the age of 19, whichever first occurs Six months prior to the high school graduation of the youngest child or his reaching his 19th birthday, the plaintiff and the defendant together must put the marital home on the market at a price either to be agreed upon by the parties or established in the following way: each party is to select a real estate dealer and the two dealers selected shall then select a third dealer He/she will determine the price at which the property is to be offered and the price at which it may be sold.
Whenever the property is put on the market, the defendant shall have the option of purchasing the same at the price set forth in the parties' affidavits before the court, to wit: $180,000. To exercise that option, the defendant must notify the plaintiff and/or the agent retained who has been authorized to sell it of his intent to buy the property within two (2) weeks of the property being put on the market. He shall also, at the same time, execute a binder for the property and pay the required down payment.
If the defendant does not notify the plaintiff or the dealer, as the case may be, of his intent to buy the property within the time allotted, the price for the property shall be set in the manner indicated above and sold at the price set for the sale.
Once the property is sold, the net proceeds thereof, after CT Page 9596 deducting the costs of sale, the outstanding mortgage, taxes or other liens, attorney's fees, shall then be distributed as follow: fifty (50%) percent to the plaintiff and fifty (50%) to the defendant.
The support of the children shall be in accordance with the guidelines, and the noncustodial parent will have the obligation to pay the support as set forth in the brief of counsel for the children, to wit: $204.39.
Since joint custody is not possible, it would appear that sole custody must be awarded in this case to the plaintiff.
Visitation is a problem because the children have expressed through their counsel their desire not to have their father call them or visit with them on any regular basis. They wish to be in control of the visitation. Given their ages of 14 and 16, it is unrealistic to expect any court ordered scheduled visitation to be complied with; however, the court feels strongly that the children should have contact with their father and that he should make every effort to find ways to encourage them to visit him — through activities of their choosing, perhaps a ball game for the boy, a play for the girl, shopping expeditions for both of them, a trip to Port Jefferson on the ferry, tennis tournament or playing tennis. The court would ask counsel for the children to find out from the children what kinds of activities they might like to enjoy with their father and advise him of their wishes The defendant shall not telephone the children at home or at their friends' homes, but the children may telephone their father at his home or at his place of business and they must telephone him at least once every two weeks. The defendant further shall not attend any of the children's sports or other activities unless specifically invited by the children.
Because the court is concerned that the children have a relationship with the father, it will order a minimum period of visitation which shall not be at the children's option but shall be as established by the court.
The plaintiff asked for $1.00 a year alimony. The defendant has asked for alimony in a more substantial amount but on the premise that he would have custody of the children and be living with them in the marital home. It is apparent that both parties have approximately the same earning capacity, and their earnings presently are almost identical. Given that situation, there is no CT Page 9597 present need for alimony, but to protect both parties, the court will order each party to pay the other $1.00 a year alimony until the recipient thereof remarries, cohabits within the meaning of the statute or dies.
Both parties have health insurance covering the children and both have life insurance of which the children should be made the beneficiaries or the plaintiff as trustee for the children.
The defendant is presently living with his stepfather to whom he is paying $150.00 a week for rent and utilities. While the defendant's affidavit set forth expenses exceeding his declared income, its accuracy is questionable: first, he has failed to include the value of his 401k plan from Perkin Elmer in his two prior affidavits in March; secondly, he failed to include his military pension in his two prior affidavits; thirdly, he failed to provide a value for his 401k Perkin Elmer plan until his last affidavit in May and that value is $24,821.07. Further, he listed the gas and oil expenses at $60.00 a week and at the same time an $80.00 a week payment to Getty Oil Credit Card.
Moreover, while he and the plaintiff own the condo in Bridgeport, without the plaintiff's consent, he has rented it to his sister at a below market rate which is not enough to pay for the mortgage and the utilities. This gives him the advantage of a loss for tax purposes but it also means he is deliberately depriving himself of additional income as well as of a better place to live.
The defendant's affidavit also reflects his ownership of three treasury bonds, not in themselves significant except that he denied having any now.
In sum, the accuracy of the defendant's affidavit and the credibility of his testimony are both questionable. He certainly lied about visiting the house against the court order. While his need to visit is understandable, his lying about it is not.
Having considered all of the elements of § 46b-81 and § 46b-82, the court makes the following findings and orders:
1. The parties were married on March 18, 1978 in Bridgeport, Connecticut.
2. Neither party has received local, state or federal aid. CT Page 9598
3. Both parties have resided in this state at least 12 months prior to the institution of this action.
4. The marriage has broken irretrievably with no hope of reconciliation and it is hereby dissolved.
5. There are two children issue of the marriage, Nicole born December 25, 1980 and Peter born November 17, 1982.
6. CUSTODY:
 a. Since the parents are unable to effectively communicate with one another about the children's welfare, the court orders that both legal and physical custody of the children be awarded to the plaintiff.
7. VISITATION:
 a. Because of the present deterioration in the relationship between the defendant and the children, there will be no weekly or biweekly regularly scheduled visitation There must, however, be at least one visitation per month by the defendant. That should take place on the last Sunday of the month beginning at 9:00 a.m. and lasting until 4:00 p.m. For this purpose, the defendant shall pick up the children on the street outside the marital home. The children shall meet him there without the presence of the plaintiff.
 b. The defendant shall not drink any alcoholic beverages prior to picking up the minor children or at any time during the course of the visitation nor shall he have alcohol in his car when the children are present.
 c. The children shall call their father at least once a week, either at his home or his business, wherever they can reach him. For this purpose, he shall give them the best time to call him and the number at which he can be reached.
 d. All other visitation shall be at the initiation of the children and for activities in which they wish to engage. The defendant shall not telephone the children at home or at their friends' houses or on a mobile phone CT Page 9599 should they possess one.
 e. The defendant shall not attend any of the childrens' school activities unless one or both of them invite him.
 f. The plaintiff shall make every effort to encourage the children to see their father and to see that they call him at least once a week as well as keep the date for visitation on the last Sunday of the month open and available for this visitation.
8. SUPPORT:
 a. The defendant shall pay the plaintiff the sum of $204.74 as child support in accordance with the guidelines.
9. INSURANCE:
 a. Both parties shall maintain hospital, medical and dental insurance for the children, as it is available to them through their respective employment. They shall be equally responsible for the payment of any unreimbursed medical, dental or hospital expenses including but not limited to orthodonture expenses, psychiatric or psychological expenses and the like.
 b. Each party shall name the children as beneficiaries on each party's life insurance policies or in the alternative the plaintiff shall be named as trustee for the children in those policies.
11. ALIMONY:
 a. Each party shall pay the other $1.00 a year alimony until the party receiving the alimony dies, remarries or cohabits within the meaning of the statute.
12. ALLOCATION OF ASSETS:
 a. The chief asset owned by both parties is the marital home which is in both names. While it may remain in both names until it is sold, the plaintiff shall have exclusive possession of it and the defendant shall not interfere with that possession by visiting the property at any time unless the plaintiff or the children invite CT Page 9600 him. The plaintiff shall be responsible for all of the costs of maintaining the house including but not limited to taxes, mortgage, utilities, etc., and she shall hold the defendant harmless with respect to these obligations.
 b. The plaintiff may sell the property at any time but must first offer it to the defendant at the price at which they both value it now, to wit: $180,000. After the plaintiff puts it on the market, the defendant must notify her of his intent to buy it within two weeks after the date it is on the market. At the end of the two weeks, he must sign a binder and pay the usual deposit.
 c. If it is not sold previously either to the defendant or someone else, the parties shall put the house on the market following the youngest child's 18th birthday or age 19 if she has not graduated from high school. At that time the defendant may advise the plaintiff of his intent to buy it as set forth above. If he does not, the parties shall agree on a price to be used for putting the house on the market and on the price they would agree to sell it. If they are unable to do this, then each one shall select a real estate broker and those brokers shall together designate a third broker who will have the power to decide the asking price of the property and the price at which it will be sold.
 c. Once the property is sold, either to the defendant under the provisions set forth above or to a third party or to the plaintiff as the case may be, the net proceeds shall be divided equally between the parties.
 e. Each party shall retain his or her individual retirement accounts.
 f. Each party shall retain his or her bank accounts and any stocks or bonds in his or her name.
 g. The plaintiff shall retain the 1994 Saturn SL and the defendant shall retain his 1992 Ford Tempo. Each party shall hold the other harmless from any liens or liabilities with respect to the individual cars.
CT Page 9601
 h. The condo shall be wholly the defendant's, and he shall be liable for any taxes, maintenance, utilities, mortgage, etc., and shall hold the plaintiff harmless therefrom. The plaintiff shall quitclaim her interest in the condo within thirty (30) days of the date hereof.
13. LIABILITIES:
 a. The defendant shall be solely responsible for the VISA bank credit card and the Getty credit card and shall hold the plaintiff harmless thereon.
 b. The plaintiff shall be liable for any other credit cards in her name or in that of the defendant.
14. WAGE EXECUTION:
 a. A wage execution order shall issue for payment of the support order.
15. DEPENDENTS:
 a. The defendant may take Nicole as a dependent on his tax return and the plaintiff may take Peter as a dependent on her tax return.
14. ATTORNEY'S FEES:
 a. Each party shall be responsible for his or her own attorneys fees.
 b. The fees of counsel for children appear to be fair and reasonable and counsel's motion for payment is granted Each party shall be responsible for one half of the fees, and payment shall be remitted within thirty (30) days of the date hereof.
It is so ordered.
MARGARET C. DRISCOLL JUDGE TRIAL REFEREE